**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTINE MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-2507 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant.[1] | § | |

## MEMORANDUM AND ORDER

In this case appealing a denial of Social Security benefits, Plaintiff Christine

Martinez has filed a Motion for Summary Judgment and Supporting Brief [Doc. # 7]

("Plaintiff's Motion"). Defendant Nancy A. Berryhill also has filed a Motion for

Summary Judgment [Doc. # 8], which also constitutes her brief in support of the

motion [Doc. # 8] as well as her response to Plaintiff's Motion for Summary

Judgment [Doc. # 8] (collectively, "Defendant's Motion"). The motions are ripe

for decision. Having considered the parties' briefing, the applicable legal

authorities, and all matters of record, the Court concludes that Plaintiff's Motion

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted automatically for Acting Commissioner Carolyn W. Colvin, the Defendant named in Plaintiff's Complaint. *See* FED. R. CIV. P. 25(d).

should be **granted**, that Defendant's Motion should be **denied**, and that the matter should be **remanded** to the Commissioner for further proceedings.

# I.    BACKGROUND

## A.    Procedural Background

Plaintiff Martinez filed an application with the Social Security Administration ("SSA") on February 4, 2015, seeking disability benefits under Title II and supplemental security income ("SSI") benefits under Title XVI.   Administrative Record [Doc. # 5] ("R.") 27.[2]   She alleges onset of disability on November 15, 2014. *Id.*   After being denied benefits initially on July 15, 2015 and upon reconsideration on August 4, 2015, the Plaintiff filed a written request for a hearing before Administrative Law Judge ("ALJ") Kelly Matthews.   *Id.*

On November 21, 2016, the ALJ held a hearing.   R. 49-79.   Plaintiff was represented by counsel, appeared in person and testified.   R. 27.   The ALJ also heard testimony from independent vocational expert Herman Litt and medical expert Albert I. Oguejiofor, M.D.   *Id.*

On December 16, 2016, the ALJ denied Plaintiff's request for benefits.   R. 27-43.   On June 8, 2017, the Appeals Council denied Plaintiff's request for review.    R.

---

[2]    Throughout this Memorandum, cites to pages in the Administrative Record refer to the page numbers in the bottom right corner of each page.

1-7.   The Plaintiff filed this case on August 14, 2017, seeking judicial review of the Commissioner's denial of her claim for benefits.   Complaint [Doc. # 1].

## B.   **Factual Background**

Plaintiff Martinez previously was employed by Southwest Airlines as a reservationist.   R. 56-57.   The relevant period for inquiry is from November 15, 2014, her alleged onset date, through December 16, 2016, when the ALJ denied her application for benefits.

Plaintiff did not work during the relevant period because she was on medical leave from Southwest Airlines starting on November 16, 2014, due to five invasive surgical procedures, among other issues.   She applied for disability benefits based on multiple impairments including degenerative disc disease of the cervical and lumbar spines, degenerative joint disease of the bilateral knees, cancer of the salivary gland, and leukemia.   Throughout the period, she was treated by Terry Newman, M.D., her primary care physician, along with multiple other physicians.

Records from September 2014, just before the relevant period, demonstrate that Plaintiff suffered from osteoarthritis (spondylosis), degenerative changes in the cervical and lumbar spine, straightening of the normal cervical lordosis (curvature of the spine), annular tears, and cervical disc protrusions.   R. 304-06 (Exhibit 2F).   These diagnoses were supported by Magnetic Resonating Image ("MRI") testing of

her neck and spine, as well as a total bone body scan.   R. 304-05, 323 (Exhibit 2F).

Plaintiff was scheduled for surgery on her cervical spine on November 17, 2014.

R. 38.

On November 17, 2014, Dr. Richard Westmark, M.D., a neurosurgeon,

performed an anterior cervical discectomy and fusion, or "ACDF," to correct

Plaintiff's cervical spondylosis and stenosis.   R. 755-58 (Exhibit 10F).   Dr.

Westmark's notes preceding the surgery stated that Plaintiff "appear[ed] in acute

distress," had decreased reflexes and range of motion in her neck, and complained

that her hands were numb and the pain was "unbearable."   R. 759-60.   His findings

during the procedure included "marked spondylosis."   R. 757.   Dr. Westmark wrote

a letter opining that, because of her surgery, Plaintiff would be unable to work from

November 16 through December 29, 2014.   R. 766-67.

Plaintiff did not return to work in January 2015 because her recovery from

surgery was complicated and prolonged by a bacterial infection that developed after

the surgery.   *See* R. 398-400 (Exhibit 3F) (primary care physician, Dr. Newman,

notes complications from surgery).   In particular, Plaintiff developed post-surgery

symptoms including hoarseness, paralysis on the right side of her face, and hearing

loss.   Dr. Westmark therefore signed another letter requesting that Plaintiff's

medical leave be extended through January 26, 2015, noting "complications" from

her ACDF surgery and stating that he had referred her to an ear, nose and throat ("ENT") specialist.   R. 751-72 (Exhibit 10F).

Throughout the first half of 2015, Plaintiff received follow up care from her neurosurgery.   R. 683-95 (Exhibit 9F); R. 696-781 (Exhibit 10F).   She also continued follow up care with her primary care physician, Dr. Newman, for medications and laboratory testing.   *See, e.g.*, R. 621-22 (Exhibit 8F) (April 23, 2015).   On January 12, 2015, Plaintiff saw James Grant, M.D., of Texas ENT Specialists for treatment of her post-surgical complaints, including shooting outer ear pain and diminished voice quality.   R. 575-93 (Exhibit 6F).   Dr. Grant noted hoarseness, ringing in her ears, hearing loss in both ears, and occasional trouble swallowing.   R. 585.   He ordered an MRI and CT scan.   At a follow up appointment on January 20, Dr. Grant stated that Plaintiff's symptoms, including pain and swollen lymph nodes, were "related to the surgical trauma," which otherwise appeared to be healing appropriately.   R. 420-21 (Exhibit 3F).   However, on February 8, 2015, Dr. Grant noted that Plaintiff's MRI examination "showed non pathological lymphadenopathy" and that "a lesion in the right parotid was identified." R. 604-06 (Exhibit 7F).   He scheduled a fine needle aspiration ("FNA") of her right parotid (salivary) gland, in addition to medication.   R. 606.

On March 25, 2015, Dr. Newman referred Plaintiff to pain management

specialists because, despite her neck surgery, her pain had become worse.   R. 398-400 (Exhibit 3F).   Dr. Newman's records indicate that Plaintiff's November surgery had been complicated by a bacterial infection and a cut nerve, that her hearing had been impacted and that her throat was very sensitive.   R. 398.

On April 20, 2015, Dr. Grant performed an FNA of Plaintiff's right parotid (salivary) gland and diagnosed Plaintiff with a benign Warthin's tumor. R. 444-46 (Exhibit 4F).   *See* R. 576-78 (Exhibit 6F) (April 22, 2015 appointment).

In April 2015, Dr. Westmark, Plaintiff's neurosurgeon, signed a form stating that Plaintiff would not be able to return to work until August 26, 2015.   R. 694 (Exhibit 9F).   He stated that he had referred her to rheumatology.   R. 694.

On July 1, 2015, Dr. Westmark performed surgery on Plaintiff's right hand to relieve her symptoms of carpal tunnel syndrome. R. 730-31 (Exhibit 10F).   Plaintiff had originally been diagnosed with carpal tunnel syndrome in 2011.   R. 546-49 (Exhibit 5F).   On September 23, 2015, Dr. Westmark performed surgery on Plaintiff's left hand to relieve her carpal tunnel symptoms.   R. 720-27 (Exhibit 10F).

Dr. Westmark signed a form dated September 18, 2015, stating that, because of Plaintiff's surgery to her cervical spine on November 17, 2014, in addition to her two surgeries for carpal tunnel syndrome, and the required recovery periods, Plaintiff would be unable to return to work until October 26, 2015.   R. 728 (Exhibit 10F).

In October and November, 2015, Plaintiff continued to follow up with Dr. Newman and Dr. Grant.  R. 786, 789 (Exhibit 11F); R. 1195 (Exhibit 24F).

In November 10, 2015, Dr. Grant authored a letter requesting that Plaintiff's leave from Southwest Airlines be extended "for another [six] months" due to the complications associated with her November 2014 surgery and the treatment of her parotid gland.  R. 1311 (Exhibit 28F).  The letter states that, since Dr. Grant began treating her in January 2015, Plaintiff had been "on disability" and had "significant issues with swallowing, globus pharyngeus, hoarseness, and dramatic inflammatory process that has resulted in prominent lymphadenopathy," stating that some issues had resolved but "others have not."  R. 1311.  Dr. Grant stated that Plaintiff was being scheduled for surgical removal of the mass "in the deep lobe of the parotid gland."  R. 1311.  He noted, "This should be a long case and she will require a recovery period," recommending an extension of her "disability" for another six months.  R. 1311.

On December 8, 2015, Dr. Grant performed surgery to remove the mass from Plaintiff's parotid gland.  R. 1191-93, 1199-1200 (Exhibit 24F).  The pathology findings on the mass were "consistent with chronic lymphocystic leukemia/small lymphocytic lymphoma."  R. 1202.  Dr. Grant's follow-up records from December 23, 2015, state that Plaintiff "need[ed] oncology referral for chronic lymphocytic

leukemia." R. 1190.

Plaintiff followed up with Dr. Newman in March and May 2016 for medications and laboratory testing. R. 1089-93 (Exhibit 20F). Dr. Newman noted that her chronic lymphocytic leukemia had not achieved remission. R. 1091. He referred Plaintiff to a pain management clinic for physical therapy. R. 1091. He also adjusted her medications, including prescribing acetaminophen with codeine as needed for "severe pain." R. 1091.

On June 1, 2016, Dr. Jeffrey Lee at the Innova Pain Center treated Plaintiff for her neck pain. R. 892-93 (Exhibit 12F). Dr. Lee assessed Plaintiff with chronic pain syndrome, among other impairments. R. 893. He noted that her pain was "constant" and "stable," with an average intensity of 9/10, and was worsened by activity. R. 892. His treatment plan included medial branch blocks (injections) in Plaintiff's cervical spine to alleviate the axial neck pain and lumbar epidural steroid injections for the pain radiating down her left leg. R. 893. Plaintiff received injections in June and July 2016. R. 909 (Exhibit 13F); R. 974, 976 (Exhibit 15F).

On June 6, 2016, Plaintiff followed up with Dr. Grant at Texas ENT Specialists. R. 1185. She reported that she continued to suffer from hearing loss, numbness, ringing in her ears, shooting ear pain, and hoarseness. R. 1185. Dr. Grant assessed her with a "[n]eoplasm of uncertain behavior of [the] parotid salivary

gland," "[c]hronic lymphoctic leukemia," and "[p]arotid hypertropy." R. 1186 (Exhibit 24F). He ordered a CT scan, which revealed a nodule in Plaintiff's parotid gland. R. 1057-58 (Exhibit 16F) (noting "[m]alignant lymphoma").

In a letter dated June 13, 2016, Dr. Grant advocated for additional medical leave for Plaintiff. R. 1312 (Exhibit 28F). Dr. Grant stated that due to the multiple underlying issues, including chronic lymphocytic leukemia and the "complicated post-operative course" following Plaintiff's anterior cervical disc surgery, including "severe post-operative neuralgia/neuropathy to the neck region," Plaintiff was not medically cleared to return to work. R. 1312.

On July 25, 2016, Plaintiff sought treatment at an Emergicare facility in Houston for bilateral knee pain. R. 1074-81 (Exhibit 19F); R. 1160-78 (Exhibit 23F). In August 2016, Plaintiff followed up with Conrad Fischer, M.D., for treatment of her knee pain. R. 1110-45 (Exhibit 21F). After radiological and MRI examinations, Dr. Fischer diagnosed Plaintiff with a complex tear of the medial meniscus in her right knee, in addition to bilateral chondromalecia of the patella. R. 1122-23.

On September 9, 2016, Dr. Fischer performed a medial menisectomy and patellar chondroplasty on Plaintiff. R. 1135-36 (Exhibit 21F). After surgery, Plaintiff received steroid injections and physical therapy. R. 1257-59 (Exhibit 25F).

At a follow up appointment on September 27, 2016, Dr. Fischer noted that Plaintiff was asymptomatic in both knees.   R. 1124-25 (Exhibit 21F).   However, on October 21, 2016, Plaintiff again had pain in her left knee, with progressive swelling and fluid in her calf.   R. 1127-30 (Exhibit 21F).   On October 31, 2016, Dr. Fischer noted pain in both knees.   R. 1131-33 (Exhibit 21F).

During September 2016, Plaintiff continued to follow up with Dr. Newman. R. 1086-88 (Exhibit 20F).   In November 2016, she followed up for treatment of her back pain with Dr. Lee, who administered more injections.   R. 1153 (Exhibit 22F). She also followed up with Dr. Grant for her parotid mass.   R. 1307 (Exhibit 28F).

Plaintiff appeared for an administrative hearing before the ALJ on November 21, 2016.   R. 27.   She testified about her ongoing medical conditions, including neck and back pain, ringing in her ears, sharp ear pain, hoarseness, numbness in her face and leg, and leukemia.   R. 54-60.   She stated that the effects of the injections for pain wore off in one to three days, and that her pain level was 8/10.   R. 58-59. Dr. Oguejiofor, the medical expert utilized by the ALJ, testified about Plaintiff's degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, chronic pain syndrome, degenerative joint disease of both knees, cancer of the salivary gland, and chronic lymphocytic leukemia.   R. 69-73.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.   <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: First, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence. *See Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v.*

*Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is more than a mere scintilla and less than a preponderance. *Copeland*, 771 F.3d at 923; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present. *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The court may not,

however, re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.   *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272. In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

## IV.   <u>ANALYSIS</u>

### A.   <u>Statutory Basis for Benefits</u>

Martinez applied for both Social Security disability insurance and SSI benefits. Social Security disability insurance benefits are authorized by Title II of the Social Security Act.   The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured *and* disabled, regardless of indigence. 42 U.S.C. § 423(c) (defining "insured"); *id.* § 423(d) (defining "disability").

SSI benefits are authorized by Title XVI of the Social Security Act, and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.   *See* 20 C.F.R. § 416.110 (describing this purpose).   Eligibility for SSI is based on proof of disability and indigence. 42 U.S.C. § 1382c(a)(3) (defining "disabled"); *id.* § 1382(a) (setting for the financial requirements).   A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which she applies for benefits, no

matter how long she has actually been disabled.  *Brown v. Apfel*, 192 F.3d 492, 495

n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.  Thus, the month following an application

fixes the earliest date from which SSI benefits can be paid.  Eligibility for SSI,

unlike eligibility for Social Security disability benefits, is not dependent on insured

status.

Although these are separate and distinct programs, applicants to both programs

must prove "disability" under the Act, which defines disability in virtually identical

language.  Under both provisions, "disability" is defined as the inability to "engage

in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 423(d)(1)(A) (disability insurance); *id.* § 1382c(a)(3)(A) (SSI).  The

law and regulations governing the determination of disability are the same for both

programs.  *Greenspan*, 38 F.3d at 236.

## B.    Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a

five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged

in substantial gainful activity; (2) whether the claimant has a severe impairment; (3)

whether the claimant's impairment meets or equals a listed impairment in Appendix

1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work. *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.[3] The claimant has the burden to prove disability under the first four steps. *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy. *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236. Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding. *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453. A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

In this case, at Step One, the ALJ determined that Martinez had not engaged in substantial gainful activity since November 15, 2014, her alleged onset date. R. 29. At Step Two, the ALJ found that Martinez had four severe impairments:

---

[3] The Commissioner's analysis at Steps Four and Five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations. *Perez*, 415 F.3d at 461-62. The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

P:\ORDERS\11-2017\2507MSJ.DOCX    180928.1508

degenerative disc disease of the cervical and lumbar spines, degenerative joint disease of the bilateral knees, cancer of the salivary gland, and obesity with glucose intolerance. *Id.* The ALJ also found that Martinez had multiple non-severe impairments, including diabetes mellitus, carpal tunnel syndrome, migraine headaches, and a heel spur. *Id.* At Step Three, the ALJ determined the Plaintiff did not have an impairment or combination of impairments that met or medically exceeded the severity of the listed impairments as set forth in the relevant regulations. R. 31.

Before proceeding to Step Four, the ALJ assessed Martinez's residual functional capacity ("RFC") and found that Plaintiff could perform "light" work with certain limitations:

> The claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 6 hours in an 8 hour day, and sit for at least 6 hours in an 8 hour day. The claimant is unable to climb ladders, ropes, or scaffolds. However, the claimant is able to occasionally balance, stoop, kneel, crouch, and crawl.

R. 35. At Step Four, the ALJ determined that Martinez was able to perform her past relevant work as a reservationist at Southwest Airlines, which is sedentary, semi-skilled work. R. 42. The ALJ therefore concluded the claimant was not under a disability from November 15, 2014, through December 16, 2016, the date of her decision. R. 43.

## C.    <u>**Plaintiff's Arguments for Reversal**</u>

### 1.    **RFC Determination**

Plaintiff argues the ALJ improperly determined her RFC, and that the ALJ's determination was not supported by substantial evidence.    Specifically, Plaintiff contends that the ALJ improperly rejected the opinions of Plaintiff's treating physicians and relied on the contrary opinion from the medical expert, who had not examined Plaintiff.    She cites to the records from her multiple treating physicians, including surgical reports and medical testing results, to support her claim.

An ALJ is responsible for determining the claimant's RFC, and that RFC must be supported by substantial evidence.    *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Williams v. Astrue*, 355 F. App'x 828, 832 & n.6 (5th Cir. 2009) (per curiam). An ALJ must consider the complete record.    *Myers*, 238 F.3d at 621; *see Thomas v. Astrue*, 277 F. App'x 350, 353 (5th Cir. 2008) (per curiam); *Bryant v. Astrue*, 272 F. App'x 352, 356 (5th Cir. 2008) (per curiam).    Evidence    from    treating physicians generally is entitled to significant weight.    "[T]he opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."    *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). Opinions from treating sources are entitled to greater weight that those from non-

examining sources.[4]

In this case, the ALJ gave a narration of the medical evidence, symptoms, and opinions about Plaintiff's impairments in the course of assessing Plaintiff's RFC. R. 32-42. However, the ALJ concluded inconsistently, without detailed explanation, that Plaintiff was capable of "light work." R. 35. In reaching this conclusion, the ALJ dismissed multiple letters from Plaintiff's treating physicians. First, the ALJ discounted Dr. Westmark's letters dated November 16, 2014, and April 20, 2015, which advocated for Plaintiff's medical leave from work at Southwest Airlines. R. 41. The ALJ stated simply that the letters "did not restrict the claimant from working for a full [twelve] months" and "[t]hus . . . [did] not indicate a finding of disability for Social Security purposes." *Id.*

Second, for the same reason, the ALJ gave little weight to Dr. Grant's opinion, set forth in his letter dated November 10, 2015, that Plaintiff needed six additional

---

[4]     20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Clear Fifth Circuit precedent requires an ALJ to give "controlling weight" to a treating physician's opinion, if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with . . . other substantial evidence" in the record. *Newton*, 209 F.3d at 455 (internal quotation marks and citations omitted) (alteration in original). Before declining to give any weight to the opinions of a treating doctor, an ALJ must consider the factors of length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456.

months medical leave due to the mass on her parotid gland and associated complications. *Id.* (assigning "little weight" to Dr. Grant's November 2015 letter because "there is no indication that Dr. Grant considered the Social Security requirements for disability" and "Dr. Grant did not provide any specific information indicating that the claimant would be unable to work for a full 12 months as required by the Act").

Third, the ALJ assigned "little weight" to Dr. Grant's letter dated June 13, 2016, which discussed her "chronic lymphocytic leukemia," "complicated post-operative course" after anterior cervical disc surgery, and "severe post-operative neuralgia/neuropathy to the neck region" in support of the doctor's conclusion that Martinez was "not cleared medically for work." *Id.* Here, the ALJ assigned Dr. Grant's opinion "little weight" because it concerned an issue "reserved to the Commissioner." *Id.* The ALJ further stated that Dr. Grant's opinion was "not persuasive" because it was "unsupported by" and "inconsistent with" the medical evidence in the record. R. 42.[5] As support for her conclusion, the ALJ cited to

---

[5] The ALJ stated in conclusory fashion: "The evidentiary weight to be given to such an opinion depends upon whether specific and complete clinical findings or other objective medical evidence supports it and whether it is consistent with the other evidence. This opinion is not persuasive because it is unsupported by objective clinical findings and is inconsistent with the evidence considered as a whole." R. 41-42.

records demonstrating that the FNA conducted by Dr. Grant in April 2015 led to the conclusion that Plaintiff's Warthin's tumor was benign. *Id.* However, the ALJ also specifically noted a later surgical pathology report, dated December 17, 2015, that "showed findings consistent with chronic lymphocytic leukemia or small lymphotic lymphoma," and a CT scan from June 2016 showing the presence of nodules on the lymph nodes in Plaintiff's neck. *Id.*[6] The ALJ did not explain how this later evidence impacted her conclusion that Dr. Grant's opinion was "unsupported by" or "inconsistent with" the medical evidence. *See Id.* Moreover, although the ALJ stated that the record contained "no treating notes to show that the claimant has severe post-operative neuralgia or neuropathy to the neck region," *id.*, in fact the medical records reveal that Plaintiff sought and obtained extensive treatment for pain around the time Dr. Grant wrote his June 2016 letter. *See, e.g.*, R. 892-93 (Exhibit 12F) (noting on June 1, 2016 that Plaintiff had pain in

---

[6]  R. 42 ("Specifically, on June 13, 2016, a CT scan showed that the claimant had bilateral cervical adenopathy. . . . There was a nodule within the right parotid gland. The nodule may have been an intraparenchymal lymph node or other neoplasm of the parotid gland. A CT scan showed a nonspecific bilateral axillary and upper mediastinal sub centimeter lymph nodes. There was a 4 mm pleural-based right upper lobe nodule. As noted, on April 22, 2015, a fine needle aspiration of the claimant's right parotid gland showed abundant lymphocytes and oncocytic cells. The finding was consistent with Warthin's tumor. The tumor was benign. A surgical pathology report dated December 17, 2015, showed findings consistent with chronic lymphocytic leukemia or small lymphotic lymphoma.").

the neck, shoulder, and lower back regions that was "stable," "constant," and "9/10" on average); R. 909, 974, 976 (documenting injections in June and July 2016). The ALJ's RFC determination thus rested entirely on the ALJ's dismissal of the letters from treating physician's Dr. Grant and Dr. Westmark. R. 41-42. While Fifth Circuit law provides that the determination of disability is reserved to the Commissioner, and not to Plaintiff's physicians,[7] the ALJ in this case wholly disregarded the underlying reasons for Plaintiff's physicians' letters stating she was not medically cleared to work. In fact, Plaintiff had presented ample medical evidence from both Dr. Grant and Dr. Westmark that supported the conclusions in their letters, in addition to extensive supporting evidence from Dr. Newman, Dr. Lee, Dr. Fischer, and other doctors.

The record establishes that Plaintiff had numerous, frequent medical appointments and procedures during the relevant period, including cervical spine surgery on November 17, 2014, R. 755-58, two carpal tunnel surgeries occurring on July 1 and September 23, 2015, R. 720-27, 730-31, removal of a mass from her parotid gland associated with her chronic lymphocytic leukemia on December 8,

---

[7]     Because the determination of disability is reserved to the Commissioner, a medical source's conclusion that a claimant is "disabled" or "unable to work" is not binding on the Commissioner. 20 C.F.R. § 404.1527(d)(1); *id.* § 416.927(d)(1). *See Thibodeaux v. Astrue*, 324 F. App'x 440, 444 (5th Cir. 2009) (per curiam).

P:\ORDERS\11-2017\2507MSJ.DOCX     180928.1508

2015, R.1190-93, 1199-1200, and surgery on her right knee on September 9, 2016,

R. 1135-36. As detailed above, the need for these procedures, their complications,

and the required recovery periods are supported by objective medical evidence

throughout the record, including bone scans, MRI exams, CT scans, and x-rays.

*See, e.g.*, R. 304-05, 323, 604-06. The ALJ recited much of this evidence in her

written opinion. *See* R. 37-40.

The record also documents Plaintiff's subjective complaints, which included

severe pain that was not successfully managed, despite numerous surgeries and

frequent medical treatment throughout the period. *See*, *e.g.*, R. 399 (Exhibit 3F)

(noting referral to pain-management specialists because, despite her neck surgery,

her pain had become worse); R. 892-93 (Exhibit 12F) (noting treatment at pain

management center for chronic-pain syndrome, including injections); R. 1089-92

(Exhibit 20F) (noting referral to pain-management clinic for physical therapy and

medication with codeine for "severe pain"); R. 1127-33 (Exhibit 21F) (noting that

although Plaintiff was initially asymptomatic after knee surgery, pain soon returned

in both knees); R. 1153 (Exhibit 22F) (noting further injections for back pain).

Plaintiff's treating physicians recognized and noted the severity of her

impairments in the medical records. An ALJ cannot reject a medical opinion

without an explanation. *Kneeland*, 850 F.3d at 760; *see Beasley v. Barnhart*, 191

F. App'x 331, 334 (5th Cir. 2006) (per curiam) ("The ALJ must always give good reasons for the weight it affords the opinion [of a treating physician], and must show good cause when giving that opinion little or no weight.") (internal quotation marks, alteration, and citations omitted). The ALJ's opinion in this case provides no explanation for her disregard of the medical assessments of Plaintiff's multiple treating physicians. *See Myers*, 238 F.3d at 621 (holding that an ALJ may discount weight given to a physician's opinion for "good cause" when the physician's opinion is "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence") (internal citation and quotation marks omitted).[8]

Finally, the ALJ's determination that Plaintiff retained the RFC to do "light work" on a sustained, full time basis, which included a finding that she could sit, stand and walk "about 6 hours in a 8 hour day," R. 35, does not appear to account for the amount of time Plaintiff would be absent from the workplace and her employment

---

[8]     To the extent the ALJ's opinion supporting her determination of Plaintiff's RFC relies on the testimony of the independent medical expert who did not examine Plaintiff, such testimony is insufficient in light of the other evidence of record. *See Newton*, 209 F.3d at 460 (holding that an ALJ may not reject the treating physician's medical opinions "without contradictory evidence from physicians who had examined or treated" the claimant and "without requesting additional information from the treating physician").

due to numerous doctor's visits and recovery time from her multiple surgeries.[9]

Under the regulations, a claimant's RFC "is the *most* [she] can still do despite [her]

limitations." 20 C.F.R. § 404.1545(a)(1) (emphasis added).[10] Plaintiff's complex

medical condition necessitated extensive absenteeism due solely to her medical

appointments and hospitalizations, apart from the effects of her pain and other

symptoms on her ability to sustain work-related activities.

For all the reasons explained above, the ALJ's determination that Martinez

retained the capacity for "light work" is not supported by substantial evidence.[11]

Remand is required for additional administrative proceedings consistent with this

opinion. *See Ripley*, 67 F.3d at 557-58.

## 2. Step Three Determination

---

[9] *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) ("Usually, the issue of whether a claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment."); *Watson*, 288 F.3d at 217 (holding a claimant must not only find employment, but also must have the ability to hold a job for a significant period of time).

[10] An RFC assesses the claimant's ability to do "sustained" work-related activity "on a regular and continuing basis." SSR 96-8p, § 1, 1996 WL 374184, at *1 (1996) ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

[11] The ALJ is required to consider all evidence in the record when determining the RFC. *Myers*, 238 F.3d at 621; *Ripley*, 67 F.3d at 557; *see Williams*, 355 F. App'x at 832 & n.6; *Thomas*, 277 F. App'x at 353; *Bryant*, 272 F. App'x at 356.

Given this holding, the Court need not address Plaintiff's argument that the ALJ's determination at Step Three was not supported by substantial evidence. However, on remand, the Commission is instructed to give Plaintiff's Step Three argument careful consideration. Plaintiff has presented significant medical evidence supporting her claim that she satisfied Listing 1.04A[12] during the relevant period, including evidence of degenerative disc disease, osteoarthritis, nerve root compression, motor and reflex loss, and positive straight leg raising test. *See, e.g.*, R. 267-89 (Exhibit 1F); R. 290-395 (Exhibit 2F); R. 396-427 (Exhibit 3F); R. 696-781 (Exhibit 10F); R. 860-900 (Exhibit 12F); R. 968-1033 (Exhibit 15F); R. 1066-71 (Exhibit 18F); R. 1082-1109 (Exhibit 20F); R. 1313-19 (Exhibit 29F). The ALJ's determination at Step Three that Plaintiff did not meet Listing 1.04A because Plaintiff

---

[12] Listing 1.04A provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . . .
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

"did not have motor loss, accompanied by sensory or reflex loss" and "was able to ambulate effectively," R. 33, does not adequately address the medical evidence set forth above in this Memorandum.

## V.   CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 7] is **GRANTED**.   It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 8] is **DENIED**.

A separate Order of Remand will issue.

SIGNED at Houston, Texas, this 28th day of **September, 2018**.


_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2017\2507MSJ.DOCX      180928.1508